# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-CR-20306-JLK

**UNITED STATES OF AMERICA,**

vs.

**RUBEN HERNANDO BUSTOS-PEREIRA,**

    **Defendant.**
_____/

## SENTENCING OPINION AND ORDER

THIS CAUSE is before the Court on Defendant Bustos-Pereira's Objections to the Presentence Investigation Report seeking a mitigating role adjustment [DE: 49]. After conducting a full evidentiary sentencing hearing on January 17, 2018, with testimony from the Defendant and all witnesses called by the parties, the written briefs of the parties [DE: 49, 50] and counsels' oral argument, the Court determines that the Defendant has failed to prove that he should receive a mitigating role reduction to the recommendation of the Presentence Investigation Report ("P.S.I.").

### I. Factual and Procedural Background

On April 7, 2017, while on patrol in the Eastern Pacific ocean, approximately 450 nautical miles from the Galapagos Islands, the Coast Guard cutter Dependable observed a suspicious fast traveling "go fast" vessel on the ocean. P.S.I., ¶ 6. The cutter launched a boat to board the vessel. *Id.* As the law enforcement cutter boat approached the go fast vessel, the three persons aboard the vessel jettisoned what appeared to be non-drug evidence before stopping. P.S.I., ¶ 7.

Upon boarding the go fast drug vessel, the Coast Guard boarding party discovered ". . . approximately 20 bales of cocaine . . . weighing approximately 1,000 kilos." Sentencing Hr'g

Tr., pp. 2-3. The Defendant Bustos-Pereira and two co-defendants Arana-Mideros and Montano-Giron, had been traveling at ". . . a pretty high rate of speed of 32 knots before bringing the vessel to a stop." Sentencing Hr'g Tr., p. 3. There were three powerful outboard engines on the back of the boat and it was later learned from statements of the defendants that they had been traveling nonstop for four days and nights, taking turns between the three defendants of running the boat since leaving Ecuador and to the point of interdiction by the Coast Guard, many miles from the nearest land in the middle of the Pacific Ocean. Sentencing Hr'g Tr., pp. 3, 9.

From the testimony of Drug Enforcement Agency Agent James Board, the three defendants basically all had the same role. They are three guys that are taking turns driving a boat 500 miles in the Pacific Ocean from Ecuador and Colombia to Mexico." Sentencing Hr'g Tr., p. 11. The over 1,000 kilos of cocaine were in plain view on the deck of the vessel. Sentencing Hr'g Tr., pp. 2-3, 6.

After being asked about the Defendant Bustos-Pereira's involvement in a prior refueling on a previous smuggling trip, the transcript reflects the way these boats travel thousands of miles and how they have to refuel.

> Q. If you could explain how refueling fits in the broader conspiracy.
>
> A. Sure. In order for these small boats to travel thousands of miles non-stop they have to refuel.
>
> The boat is about a 30 foot open style fishing vessel. It is very basic. Most actual fishing vessels will have one engine, maybe two.
>
> In this particular case this boat had three engines, which takes more fuel. They would have had probably ten, fifteen barrels of fuel to get a certain distance. Sentencing Hr'g Tr., p. 16.

2

> Generally they plan so they can go about 24 hours. They will then meet a refueling vessel at pre-planned coordinates.
>
> The refueling vessel is similar to the drug boat; the only difference is they are normally towed out to sea by a mother ship, something that is about a hundred foot long.
>
> It is actually a fishing vessel that doubles as home base for smaller refueling vessels. And when the drug boats get to the point of running out of fuel they will communicate with the home base for smaller refueling vessels. And when the drug boats get to the point of running out of fuel they will communicate with the home base and say we need fuel, and whoever is coordinating that portion of it will contact the refueling boat. Sentencing Hr'g Tr., p. 16.
>
> So, they are sort of like gas stations in the middle of the ocean. They know they are meeting a drug boat, and their sole job is to transfer the next 15, 20 barrels of fuel so the drug boat can make it one more day.
>
> Q. You mentioned the quantity of cocaine in this case was over a thousand kilograms.
>
> A. Approximately.

Sentencing Hr'g Tr., pp. 15-16.

After it became evident that the go fast vessel was without nationality, law enforcement boarded the boat to conduct a search. The boarding team reported approximately 20 bales were visible on the deck of the vessel, which contained a total of 1,095 kilograms of cocaine. P.S.I., p. 5, ¶ 8.

The Defendants stated in their post-arrest *Miranda* interview that "all three took turns driving the vessel driving." Sentencing Hr'g Tr., p. 14. "[T]hat is basically the way it goes because they are running nonstop from the coast of South America to Mexico in three or four days." *Id.* The transcript also states and the Court so finds that "they are basically taking turns driving while someone else is resting so they can travel nonstop 24 hours a day. It is just looking

3

out for law enforcement and making sure there are no planes overhead, that you are right on course and making the right time." Sentencing Hr'g Tr., p. 8, ¶¶ 22-23; p. 14; P.S.I., ¶11. Additionally, the Defendant indicated that he was paid $3,000 for transporting the cocaine to Mexico. Sentencing Hr'g Tr., p. 8, ¶¶ 22-23.

On July 13, 2017, the Defendant pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70506(b) [DE: 32].

The Government's counsel, in what has become typical last-minute filings of relevant pleadings, filed a motion for downward departure under the provisions of USSG § 5K1.1 on behalf of the Defendant Bustos-Pereira [DE: 48]. This document was filed with the Clerk's Office late in the afternoon of December 14, 2017 for the Court's consideration for the sentencing hearing to be held the following Monday on December 17, 2017. Again, and in typical fashion, the Government's pleading contained no facts upon which its motion for downward departure could be evaluated by the Court or any memorandum of law. The one-line motion simply stated, "Based on the facts of this case, as will be detailed at the sentencing hearing, the Defendant's assistance to the United States warrants a reduction in sentence under USSG § 5K1.1" and "asserts a recommended 15% reduction in the Defendant's sentence." *Id.*

On December 14, 2017, the Defendant filed objections to paragraphs 9, 15, 18, 20, 24 and 54 of the P.S.I. [DE: 49]. Specifically, the Defendant argued that he should receive a mitigating role adjustment based on his limited role within the broader drug-importation conspiracy. *Id.* The Government's Response to Defendant's Objections was filed on December 17, 2017, stating "that the Defendant's objections to the PSI were filed on December 14, 2017, over two months after the draft PSI was filed. While the Final Addendum to the PSI indicated

4

that counsel had advised via email of the Defendant's intention to object to the lack of a mitigating role adjustment, no filing was made until days before the sentencing date." [DE: 50]

On January 17, 2018, the Court held an evidentiary hearing to take sworn testimony on the factual issues relevant to Defendant's contention that he, by his own acts, deserved a mitigating determination assessment as set forth in his objection to the P.S.I. The Defendant called two witnesses, Agent Board and the Defendant. Agent Board testified that, based on his experience investigating Title 46 "boat" cases, the individuals aboard typically share responsibility for getting the drugs to the final destination. As such, each person is essential to the success of the conspiracy. Sentencing Hr'g Tr., p. 5, ¶¶ 10-11. Noting that the defendants had been paid slightly different amounts for participating in the scheme, Agent Board testified that this was likely due to differences in bargaining ability, rather than correlating to the importance of their respective roles. Sentencing Hr'g Tr., p. 10, ¶¶ 21-25. He further stated that unloading this large cargo of a thousand kilograms of cocaine requires two pallets, each the size of the courtroom podium. Sentencing Hr'g Tr., p. 6, ¶¶ 21-24.

Agent Board also testified that the Defendant had admitted to previously assisting in a refueling operation. Sentencing Hr'g Tr., p. 4, ¶¶ 18-20. That is, approximately two years prior to the instant offense, the Defendant had collected $500 for bringing fuel to a go fast vessel that was transporting drugs. *Id.*

The Defendant confirmed that he had previously helped refuel a boat carrying drugs (Sentencing Hr'g Tr., p. 31, ¶¶ 2-5) and that he and his co-defendants had taken turns on this trip driving the go fast vessel in this specific case. Sentencing Hr'g Tr., p. 30, ¶¶ 4-6. The defendants had been traveling non-stop for four days when they were apprehended by authorities. Sentencing Hr'g Tr., p. 25, ¶¶ 8-9; p. 30, ¶¶ 2-3. The Defendant also admitted, for the first time, that he stood to gain an additional amount of money after completing the trip. Sentencing Hr'g

5

Tr., p. 27, ¶¶ 16-17; p. 30, ¶¶ 13-15. This additional compensation, the Defendant noted, could be up to double the original $3,000 he had received at the outset of the venture. *Id.*

Against this evidentiary backdrop, the Court makes the following factual findings:

1. The Defendant was one of three total crew members transporting approximately 1,095 kilograms of cocaine from Colombia to Mexico. The three defendants had shared the responsibility for the operation of the boat by taking turns for the steering, navigation on a directed course, essential refueling as might be required to ensure the vessel arrived safely and in the shortest amount of time to the point where it was turned over to the point of designated delivery, since leaving Colombia for Mexico. This record does not contain any evidence from the Defendant's testimony or the other statements by the co-defendants that would establish facts demonstrating that Defendant Bustos-Pereira participated less than his other two co-defendants during this four-day, four-night voyage from Colombia to the point of interdiction by the Coast Guard. The record does reflect that the responsibility for the operation of the vessel during this period of time was shared by the three equally.

2. The Defendant was paid $3,000 at the outset of the trip and he was promised an additional $3,000 to $6,000 upon the successful and timely completion of the drug delivery.

3. The Defendant and co-defendants took turns driving the go fast vessel continuously, 24 hours per day for four days and nights.

4. Approximately two years prior to the instance offense, the Defendant had previously participated in the refueling of a vessel he knew to be transporting drugs.

## II. The Applicable Law

The Sentencing Guidelines provide for a four-level decrease to a base offense level if a defendant was a minimal participant in the criminal activity. U.S.S.G. § 3B1.2(b). A defendant is a "minimal participant" if he is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n. 4). Moreover, the Guidelines authorize a two-level reduction when a defendant is "less culpable than most other participants in the criminal activity" but cannot otherwise be described as a minimal participant. U.S.S.G. § 3B1.2, comment. (n. 5). The proponent of the downward adjustment bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

*De Varon* remains this Circuit's leading case concerning the minor-role reduction. In *De Varon*, the Eleventh Circuit instructed sentencing courts to consider: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." *Id.* at 940. With respect to the first factor, the Court held that a defendant is not precluded from receiving a minor role adjustment simply because he was held responsible solely for the amount of drugs he was personally transporting. *Id.* However, "where the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." *Id.* at 942. The Court also outlined a list of factual considerations bearing on the minor-role assessment, including the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." *Id.* at 945. In November 2015, the

7

Commission issued Amendment 794 to the Guidelines, which incorporated some of the factors outlined by the *De Varon* Court.

These factors include:

(1) the degree to which the defendant understood the scope and structure of the criminal activity;

(2) the degree to which the defendant participated in planning or organizing the criminal activity;

(3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(5) the degree to which the defendant stood to benefit from the criminal activity.

Additionally, the fact that the defendant plays an indispensable role in the criminal activity is not determinative. U.S.S.G. Supp. App. C, Amend. 794.

In *United States v. Cruickshank*, 837 F.3d 1182 (11th Cir. 2016), the Eleventh Circuit considered whether a district court, in relying primarily on drug quantity, failed to follow *De Varon* as well as Amendment 794 (which had become effective after the sentencing). *Cruickshank*, 837 F.3d at 1194. The Court observed that "nothing in *De Varon* or Amendment 794 precludes a district court from considering the drug quantity with which the defendant was involved as an indicator of his role." *Id.* Nevertheless, the sentencing court had overstepped the mark by concluding that the quantity of drugs was "so large that any participant in [the case] can't be said to be engaged in minor activity." *Id.* at 1194-95. This reliance on one factor to the exclusion of all others was at odds with *De Varon*'s holistic approach. *Id.* Similarly, in *United*

8

*States v. Colorado*, the Eleventh Circuit rejected the district court's emphasis on a single factor to the exclusion of others. *United States v. Colorado*, No. 16-17714, 2017 WL 5712790, at *3 (11th Cir. Nov. 28, 2017) (noting that the district court suggested that "it treated all conspiracy-to-traffic-drugs cases uniformly" and would, as a matter of rule, never provide minor role in those cases).

On the other hand, the Eleventh Circuit has affirmed the denial of a mitigating role adjustment where a district court properly considered the totality of the circumstances, and did not unduly base its decision on a single factor. *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), is particularly instructive, as it involved facts nearly identical to those presently before the Court. In *Palma-Meza*, the district court found the defendant, who was one of three crew members aboard a boat carrying over 480 kilograms of cocaine, was not entitled to a minor role adjustment. The Eleventh Circuit affirmed the district court's decision, concluding that it had "permissibly considered the quantity of drugs involved, the small crew size, and [the defendant's] intelligence, education, and occupation assets" as factors relevant to the role assessment. 685 F. App'x at 810. With respect to the defendant's argument that he was less culpable than his co-defendants, the Eleventh Circuit, agreeing with the district court, observed that he was "in a position to do most of the duties on board the vessel" and highlighted the fact that the defendant and his co-defendants each "took turns driving the vessel and changing the fuel lines." *Id.* at 811.

In the present case, the Defendant is being held accountable for his own conduct at sentencing—that is, the drug amount attributed to him under the Guidelines was set based on the amount of narcotics he was actually transporting on the go fast vessel. P.S.I. ¶¶ 11, 13 (summarizing Defendant's post-*Miranda* statement, in which he admitted he was transporting drugs to Mexico in exchange for $3,000). In other words, the Defendant is not being held

9

"accountable for conduct that is much broader than [his] specific acts." *De Varon*, 175 F.3d at 941.

During the sentencing hearing, the defense suggested that, following the Eleventh Circuit's decision in *Cruickshank*, prior precedent affirming the denial of minor role was inapplicable. But, contrary to this claim, *Cruickshank* did not overturn *De Varon*'s approach. The Defendant's other primary source of support, *United States v. Colorado*, likewise embraced the totality-of-the-circumstances analysis advanced by *De Varon* and its progeny. Accordingly, the Court sees no reason to discard these sources of legal guidance.

In *United States v. Aguirre*, 161 F. App'x 876 (11th Cir. 2006), for example, the Eleventh Circuit affirmed a sentencing court's decision not to apply a mitigating role adjustment, where the defendants were transporting ton-quantity amounts of cocaine and the defendants performed similar functions aboard the vessel. In *Aguirre*, as in this case, the defendants were paid a specific amount of money for the task of transporting the drugs, rather than being paid a commission. Likewise, in the present case, the Defendant is being held accountable for only for the amount of drugs he was personally transporting—which was a substantial quantity (1,095 kilograms) worth tens of millions of dollars. P.S.I., ¶ 9. Moreover, as one of three crew members aboard a vessel hundreds of miles from shore, he performed largely similar functions to his co-defendants.

In addition to the Defendant's functions aboard a vessel transporting thousands of kilograms of cocaine, other factors weigh against applying a mitigating role adjustment in this case. While it does not appear that the Defendant had a proprietary interest in the drugs he was transporting, the Court nevertheless notes that the Defendant did have a financial interest in ensuring that the drugs reached their intended destination. As the Defendant himself admitted, he stood to gain up to double his original fee (roughly equal to one years' salary) once the drugs

were transported successfully to Mexico. Accordingly, the Defendant clearly "stood to benefit from the criminal activity," which is one of the factors outlined in Amendment 794.

Moreover, the Defendant had previously participated in a drug-vessel refueling operation. As a result, he gained greater insight into the structure of this type of drug-importation conspiracy. As Agent Board explained during the evidentiary hearing, the success of the go fast vessel transporting the drugs depends on a separate refueling operation conducted at sea. Without regular refueling, the vessel transporting the drugs would be unable to complete the journey. The Defendant was in the unique position of having participated in both the transportation and refueling side of the scheme, gaining further insight into the "scope and structure of the criminal activity."

The Defendant cites the Sentencing Commission's commentary to § 3B1.2, which appeared to expand the range of situations in which a mitigating role adjustment could potentially apply. Nevertheless, as this Circuit's decision in *Cruickshank* and *Colorado* support, the clarifying amendments to the Guidelines merely require a fact-intensive inquiry. They do not, however, categorically instruct that the adjustment necessarily applies to a particular set of cases. This approach has been deployed in other circuits as well. For example, in *United States v. Torres-Hernandez*, the Fifth Circuit made abundantly clear that the 2015 Amendment to the Guidelines commentary "does not . . . impose any concrete requirements as to whether and when drug 'couriers and mules' . . . should receive a mitigating role adjustment." 843 F.3d 203, 206 (5th Cir. 2016). In that case, the court affirmed denial of a mitigating role adjustment, where the defendant transported 95 kilograms of marijuana (less than 10 percent of the quantity of cocaine transported by the Defendant in this case) into Brownsville, Texas. In addition to the defendant, three other individuals were transporting marijuana across the border. The Court observed that the defendant was no more culpable than the other three individuals who carried the drugs across

11

the border, and, further, the defendant had offered no evidence regarding the participation of others in the growing, further transportation, or intended sale of the marijuana. Additionally, the defendant in *Torres-Hernandez* was paid for his participation in the importation plot—but there was no suggestion that his compensation would be based on direct profits from the sale of the marijuana. Nevertheless, the Court agreed with the district court that "even if [the defendant lacked a proprietary interest], this is but one factor to be considered by the sentencing court." *Id.* at 210.

Having considered all the pertinent factors relevant to the minor-role assessment, the Court finds that the Defendant has failed to support its application in this case. First, the Defendant was held responsible for the substantial amount of drugs he was personally transporting; accordingly, under *De Varon*, his actual and relevant conduct is the same. Second, the Defendant's role in transporting the drugs was substantially similar to that of his co-defendants, all of whom participated in conducting the operation of the vessel over four days and nights. Third, the Defendant had prior experience assisting in the refueling of vessels carrying large quantities of drugs in international waters and, therefore, greater insight into the broader structure of the scheme. And fourth, the Defendant stood to gain twice his initial fee upon the successful completion of the trip, which provided a substantial economic benefit from the criminal activity—that is, the unlawful transportation of cocaine. In light of the foregoing factors and the complete set of circumstances underlying this case, the Court finds that the Defendant is not entitled to a minor role adjustment.

The Defendant's Objections to the P.S.I. [DE: 49] be, and they are hereby DENIED. The correct guideline range is, as stated in the P.S.I., of a total offense level 33, with a criminal history category of I, and a sentencing guideline range of 135 to 168 months.

### III. The Government's Motion for Downward Departure

The Government's Motion [DE: 48] filed December 14, 2017 recommends a 15% reduction to the Defendant's sentence pursuant to USSG § 5K1.1. The Defendant has raised no objection to this motion and indeed, agrees that the Court should exercise its discretion and grant the motion.

The Government's Motion and oral argument assumes that the P.S.I. calculating a total offense level of 33 with a criminal history category 1 for Defendant is correct and therefore the Government's motion for departure presumably would be applied to the advisory guideline range of 135-168 months, a supervised release period of five years, a fine of $35,000-$10M dollars, and a special $100 assessment. Applying this formula to the calculation to the low end of the advisory guideline range would result (after 15% reduction) in a sentence of 114 months incarceration.

Counsel for the defense in oral arguments submits that the Court should sustain Defendant's objections to the P.S.I. in the preceding listed paragraphs which would then result in a lower offense level and advisory guideline range.

Contrary to the Government's Motion, stating that it would detail at the sentencing hearing the Defendant's assistance warranting a 15% reduction, it produced no evidence on this point neither by live testimony or documentary exhibits. Other than the statement of the Defendant that, upon his arrest by the United States Coast Guard law enforcement officials during the boarding of the boat in the middle of the Pacific Ocean 450 miles from the Galapagos Island, that he had immediately pled guilty and stated his willingness to cooperate with the Government, the Court has not been aware of his "substantial assistance" upon which it can base a factual determination or an opinion as to the granting or denial of the Government's Motion (as joined in by the Defendant) for 5K1.1 reduction.

Nevertheless the Court grants its discretionary approval of the 5K1.1 Motion between the Government and defense counsel where, as in this case, the Court has confidence in the ability of two experienced lawyers to negotiate these matters and arrive at reasonable, proper, and sensible recommendations to the Court.

It is therefore, **ORDERED, ADJUDGED and DECREED** that Ruben Hernando Bustos-Pereira's Objections to the Presentence Investigation Report **[DE: 49]** be, and the same are hereby **DENIED**. The United States Government's Motion for a Downward Departure **[DE: 48]** seeking, pursuant to USSG § 5K1.1 a 15% downward departure from the low end of the guideline range be, and the same is hereby **GRANTED**. The Court will apply this 15% reduction to a sentence the Court intends, at this point, and subject to any further arguments submitted by either party at the sentencing hearing, to be scheduled by further order of the court, to sentence at the low end of the guideline range and apply the 15% reduction recommended by the government for Defendant's assistance to the government.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 6th day of March, 2018.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record